EXHIBIT ONE

LAW OFFICES
## GIBBS & HOLMES
171 CHURCH STREET, SUITE 110
POST OFFICE BOX 938
CHARLESTON, SOUTH CAROLINA 29402-0938

ALLAN R. HOLMES
PARTNER
CERTIFIED SPECIALIST IN LABOR
AND EMPLOYMENT LAW

TELEPHONE (843) 722-0033
TELECOPIER (843) 722-0114
E-MAIL
aholmes@gibbs-holmes.com

September 6, 2012

VIA EMAIL (Melvin.L.Peterson @ Boeing.com and Susan.K.Reed @ Boeing.com) AND REGULAR MAIL

PERSONAL AND CONFIDENTIAL
Mr. Melvin L. Peterson, Director
Ms. Susan K. Reed, Human Resource Manager
The Boeing Company
5400 International Boulevard
North Charleston, South Carolina 29418

Re: Mr. David Spires

Dear Ms. Reed and Mr. Peterson:

    We have been retained by Mr. Spires with regard to complaints of retaliation and discrimination against him in violation of the Americans with Disabilities Act (ADA) and Age Discrimination and Employment Act (ADEA). Mr. Spires has been unlawfully denied promotional opportunities and subjected to a pattern of mistreatment and hostility by his current supervisor, Mr. Kevin Kramer, with the approval and direction of the higher management of the Boeing Company. It is apparent that the company is trying to drive Mr. Spires out of his job without any reasonable justification. Please consider this letter a formal complaint and a request that appropriate action be taken. Please communicate only with me regarding this legal matter.

    If we have not heard from you within five (5) calendar days of this letter, we will assume that there is no interest in an informal resolution of this matter.

    With kind regards, I am

Very truly yours,

Allan R. Holmes

Cc: Mr. David Spires

# EXHIBIT TWO



**Chevon Fuller**
Senior Counsel
Labor, Employment & Benefits
Law Group

The Boeing Company
5400 International Blvd. MC 7830-SW81
North Charleston, SC 29418



Phone: 843-641-2391
Fax: 314-777-5316
chevon.fuller@boeing.com

September 6, 2012

**Via E-Mail: aholmes@gibbs-holmes.com**
Allan R. Holmes, Esq.
Gibbs & Holmes
P. O. Box 938
Charleston, SC 29402-0938

Re:   Mr. David Spires

Dear Mr. Holmes:

I have received your correspondence regarding David Spires. The Boeing Company has longstanding, strong, and effective policies against discrimination and harassment in the workplace and I stand firmly behind them. Boeing is committed to fostering a work environment where everyone is treated fairly with trust and respect. We are committed to maintaining a work environment that is free from discrimination and harassment. Raising any concern at our site – especially in the areas of harassment or intimidation – is encouraged and supported by Boeing. To that end, I have forwarded your letter to our internal Equal Employment Opportunity office so that it may address the allegations in your letter directly with Mr. Spires in accordance with our company process.

In the mean time, you have provided me with no factual information which would lead me to believe that a "resolution" is required outside of our normal company process. Nevertheless, please feel free to contact me with any concerns or questions you have or information you wish to share. I will be your company contact for any issues you have concerning Mr. Spires. Although you may, of course, continue to provide advice and assistance to him, you will not be permitted to directly participate in our company process or to communicate with our EEO investigator regarding Mr. Spires' concerns.

Very truly yours,

Chevon Fuller

CF/pd

EXHIBIT THREE

2:14-cv-00386-DCN-BM     Date Filed 02/13/14     Entry Number 1-1     Page 5 of 12

LAW OFFICES
## GIBBS & HOLMES
171 CHURCH STREET, SUITE 110
POST OFFICE BOX 938
CHARLESTON, SOUTH CAROLINA 29402-0938

ALLAN R. HOLMES
PARTNER
CERTIFIED SPECIALIST IN LABOR
AND EMPLOYMENT LAW

TELEPHONE (843) 722-0033
TELECOPIER (843) 722-0114
E-MAIL
aholmes@gibbs-holmes.com

September 11, 2012

VIA EMAIL [Chevon.Fuller @Boeing.com ] AND REGULAR MAIL

PERSONAL AND CONFIDENTIAL

Chevon Fuller, Esq.
Senior Counsel
Office of the General Counsel
The Boeing Company
Boeing South Carolina
5400 International Blvd.
Mailcode 7830-SW81
North Charleston, SC 29418

Re: Mr. David Spires

Dear Ms. Fuller:

      Thank you for your letter and call. As I explained, Mr. Spires indicates that he has been asked to provide something in writing which is to represent a "Performance Improvement Plan." As I also indicated, he was given a document which my recollection indicated involved his new manager's dislike of Mr. Spires' interactions with that manager.

      After our conversation ended, I located the document I recalled reviewing. It is the Performance Improvement Plan dated July 30, 2012. The "Performance Improvement Area" is as follows: "Lives the Boeing Values. Collaboration with coworkers 1) By not disrupting meetings; 2) Not supporting decisions that you have agreed to support; 3) When given specific direction from your manager you question his direction." In response to the document, at the request of management, Mr. Spires provided "Management and HR" with a written "Performance Improvement Plan – Proposed" dated August 6, 2012. I have attached a copy. This document outlines steps and objectives. It also sets out the challenges presented by Mr. Spires' recently discovered impairment, the disease of diabetes.[1]  Mr. Spires tells me that this was deemed unacceptable as a plan, and that he presented another proposal which he drafted and sent to Ms. Reed on, or about, August 9th. He asked for her input. His email requesting this input is attached.  Ms. Reed said that she did not have the time to assist him, and Mr. Spires'

---

[1] In addition to his recently discovered diabetes, Mr. Spires' medical issues include coronary surgery some years ago for blocked arteries, and hypertension for which he takes medication. Despite his medication, he believes his job related stress is causing his hypertension to become symptomatic again.

1

supervisor subsequently rejected the proposal by tossing it in the middle of the table, and saying "that's no good." A copy of this proposal is also attached.

At meetings, Mr. Spires has been berated by his supervisor who makes comments in response to Mr. Spires' written submissions. Most recently, his supervisor stated, "Well, you've just wasted another week."

I am sure that you share my interest in what would prompt a 66 year old employee who was part of the team that constructed the original Boeing facilities in South Carolina to so abruptly stop "living Boeing values." Indeed, Mr. Spires has had terrific relationships with prior managers like Tim Coyle, VP of the Boeing Company, and he would not hesitate to use Mr. Coyle as a reference. Mr. Spires provides the following information.

Two years ago, he had a manager who was investigated by Boeing for alleged corruption in his dealings with a contractor on site. The manager showed open favoritism in contracts for a company that had previously employed him. After some weeks of investigation by Boeing Ethics, including interviews by an attorney, Mr. Spires requested a transfer to another manager until the investigation was concluded. This request was made because the manager became aware that Mr. Spires was providing the company with information about the manager's misconduct. On the day that Mr. Spires transferred to a new manager, his former manager caused a complaint to be filed against him for poor performance, and threatened to terminate his employment if improvement was not seen in 30 days. This was obvious retaliation because Mr. Spires had been provided a performance review by the same manager about a month earlier which stated that Mr. Spires' performance "Exceeds Expectations" and on which the manager wrote, "Dave is working very well with management to meet long and short range objectives."

At the conclusion of Boeing's corruption investigation, in 2010, Mr. Spires received a phone call from Mr. Jeff Culp, of Boeing Ethics, telling Mr. Spires that the allegations against Mr. Spires' former manager had proven to be factual. Mr. Culp further stated that the document threatening Mr. Spires' job and accusing him of poor performance was obvious retaliation, and it would be removed from Mr. Spires' file. Mr. Spires' subsequent manager never suggested that the threatening document had any validity, and, in fact, Mr. Spires was given two good performance reviews during the last two years.

Three months ago, Mr. Spires was transferred to Mr. Kramer. Mr. Kramer is reputed to have a reputation for brutal management. Mr. Kramer is significantly younger than Mr. Spires. Mr. Spires was on the facility organizational chart in two positions: 1) manager of contractor services; and 2) building and infrastructure manager, second shift. While Mr. Spires was holding these positions, Mr. Kramer assigned the positions to other significantly younger persons. These younger people were placed in these positions and worked in them even though Mr. Spires was still listed on the organizational chart as holding the positions. Mr. Spires was required to train these replacements. As regards the contractor services position, Mr. Spires had been successfully performing this work for years, and he was replaced by a younger person who is a newcomer to Charleston with no experience on site. Eventually, Mr. Spires was moved to a newly created position of weekend manager. He is required to be either on site or on call 24 hours / day on Saturday and Sunday. He also works 10 hours on Friday and Monday. A less suitable position for his health condition would be difficult to imagine. For example, this last weekend, Mr. Spires worked on site from 6 a.m. until 3 p.m. Saturday; was called into work at

2

1 a.m. Sunday to work to 8 a.m. Sunday; was called in at 1 p.m. on Sunday; worked until approximately 6 p.m. on Sunday; and returned to work on 6 a.m. on Monday. Mr. Spires began to question why he was denied the assignments on the organizational chart which still had his name associated with them. Mr. Kramer would not provide a reason. Mr. Spires continued to question the matter, as well as the issue of why Mr. Spires had no significant backup managerial support for the weekend work, and only one-half of the crew he had been promised. In late July, Mr. Kramer responded with the Performance Improvement Plan. Mr. Spires is made to understand that he is not to complain about Mr. Kramer's giving someone else the positions (the positions with Mr. Spires' name on them), or face dismissal. Mr. Spires has been ordered to do what he is told without questioning why. Mr. Kramer found a copy of the retaliation document from 2010, and he referred to it when ordering Mr. Spires about with the recent PIP. Mr. Spires explained to Mr. Kramer that the document had been discredited by the Boeing investigation and was not supposed to be in Mr. Spires' file. Mr. Kramer told Mr. Spires that he did not get the document from Mr. Spires' file. On August 12, 2012, Mr. Spires filed a written complaint with Boeing Ethics about the use of the 2010 discredited document.

    Needless to say, Mr. Kramer's publication of this discredited disparagement of Mr. Spires' performance is defamatory, and the circumstances of this publication are indicative of bad faith on the part of Mr. Kramer.

    Since my telephone conversation with you, Mr. Spires has been told that the 2010 performance evaluation will not be utilized any more. However, no one has apologized for the improper use of the evaluation, and I have attached the latest "Employee Corrective Action Memo" which indicates Mr. Spires has 30 days to meet the requirements of the PIP or face termination.

    While the PIP of July 30, 2012, reads as though it is primarily directed to Mr. Spires' attempts to obtain answers from his supervisor, it also suggests that Mr. Spires has required "reminders" as to various work-related activities. Mr. Spires' August 6, 2012, proposed performance improvement plan outlines the difficulties which should be attributed to his diabetes. As best I can determine, no effort has been made to recognize or accommodate these difficulties.

    Mr. Spires has met with representatives of the United States Equal Employment Opportunity Commission regarding this matter. We are pleased that Boeing has expressed its willingness to provide a thorough and comprehensive investigation, and we remain available to provide such additional information as might be requested. We would appreciate your taking such steps as might be taken to protect our client's reputation from further injury, and we are quite concerned about the toll that the current situation is taking upon his health.

    Thank you again for your prompt response to my letter.

With kind regards, I am

Very truly yours,

Allan R. Holmes

ARH/avh

EXHIBIT FOUR

LAW OFFICES
## GIBBS & HOLMES
171 CHURCH STREET, SUITE 110
POST OFFICE BOX 938
CHARLESTON, SOUTH CAROLINA 29402-0938

ALLAN R. HOLMES
PARTNER
CERTIFIED SPECIALIST IN LABOR
AND EMPLOYMENT LAW

TELEPHONE (843) 722-0033
TELECOPIER (843) 722-0114
E-MAIL
aholmes@gibbs-holmes.com

January 10, 2014

VIA EMAIL [Chevon.Fuller @Boeing.com ] AND REGULAR MAIL

PERSONAL AND CONFIDENTIAL

Chevon Fuller, Esq.
Senior Counsel
Office of the General Counsel
The Boeing Company
Boeing South Carolina
5400 International Blvd.
Mailcode 7830-SW81
North Charleston, SC 29418

Re: Mr. David Spires

Dear Ms. Fuller:

    I last corresponded with you about the above-referenced client of this office on September 7, 2012. Subsequently, Mr. Spires filed a charge under the Americans with Disabilities Act (ADA). He has received a right to sue, and we are considering filing suit against Boeing.

    To briefly summarize the events which have occurred regarding Mr. Spires' employment since the Fall of 2012, his physical condition, coupled with Boeing's refusal to provide accommodation for his disabilities, led him to obtain disability benefits from the company's disability carrier shortly after our correspondence. He began with short term disability and was deemed eligible for long term disability. He continues to receive long term disability benefits. Throughout the period, Mr. Spires has sought to obtain sufficient accommodation from Boeing to allow him to return to work. The agents of the disability management group, Aetna, have caused the limitations associated with his disability to be monitored and documented. Most recently, he has been provided a Functional Capacity Assessment by Charleston Physical Therapy. A copy is attached and enclosed. This assessment has been furnished to Boeing at the Charleston facility. This assessment makes it clear that Boeing could return Mr. Spires to work with very little in the way of accommodation. However, the relevant personnel at Boeing are refusing to have any communication with him about his return to work except to tell him that he must have his orthopedist, Dr. Donald Johnson, place his signature on the report as though he shared responsibility for authoring it. Dr. Johnson has refused to do this as he does not view

himself as able to provide functional capacity assessments. Rather, he obtained the functional capacity assessment from the appropriate experts in that field. Charleston Physical Therapy is an "approved" Boeing vendor.

Since this report was produced, Boeing's refusal to return Mr. Spires to work is without any rational basis whatsoever, and we view Boeing's conduct as retaliatory and discriminatory in violation of the ADA.

We would appreciate your reviewing this matter as quickly as possible and determining whether any informal resolution may be reached. Mr. Spires and I are available to meet with you or any other representative of the company at your convenience.

Thank you for your consideration of this letter. We look forward to discussing this with you.

With kind regards, I am

Very truly yours,

Allan R. Holmes

ARH/avh

2