IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DAVID SPIRES, | ) CASE NO. 2:14-CV-0386-DCN-BM |
| Plaintiff, | ) |
| vs. | ) |
| | ) **PLAINTIFF'S LOCAL RULE 26.03** |
| | ) **RESPONSES** |
| THE BOEING COMPANY, | ) |
| Defendant. | ) |

The Plaintiff provides the following responses to Local Rule 26.03:

**(1) A short statement of the facts of the case.**

The Plaintiff, David Spires was born November 25, 1945, and is 68 years of age as of the filing of his complaint. At all times material to this complaint, plaintiff has suffered from multiple disabilities. In particular, he has suffered from physical or mental conditions that substantially limit major life activities (such as walking, talking, seeing, hearing, or learning). The Defendant, The Boeing Company, currently employs approximately 169,000 employees. It employed the Plaintiff at its South Carolina facility.

This action arises under Title I of the ADA, 42 U.S.C. Sections 12201, *et seq.,* as amended, and the ADEA, 29 U.S.C. Sections 621, *et seq.*, as amended. Plaintiff has filed a timely charge of discrimination and retaliation under both the ADA and the ADEA with the United States Equal Employment Opportunity Commission (EEOC). The EEOC has issued its Right to Sue Letter, and this complaint is filed within 90 days of the plaintiff's receipt of that letter. In addition, this Court has jurisdiction of the plaintiff's claims of

reprisal occurring subsequent to the filing of his charge of discrimination under the authority of *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009).

Plaintiff has been employed by the defendant at the defendant's North Charleston, South Carolina, facility since the defendant purchased Global Aeronautica in approximately 2010. During his tenure at the relevant facilities, plaintiff was employed by a predecessor to the Boeing Company as a Field Engineer and helped construct the original factory buildings utilized by the Boeing Company (hereinafter "Boeing") in South Carolina. Immediately prior to his Boeing employment, plaintiff was employed as a facilities manager with Global Aeronautica. When Boeing initially employed the plaintiff, it gave him seniority credit for the entirety of his employment with Global Aeronautica.

During all of his employment with the defendant, the plaintiff performed his duties in an exemplary fashion, and his performance earned the approval of each of 4 different managers who supervised him.

On or about the Summer of 2012, the plaintiff was assigned to a manager, one Mr. Kramer, who targeted plaintiff for unlawful discrimination on account of plaintiff's age. *Inter alia*, this manager denied the plaintiff appointment to the position managing maintenance contracts in a reorganization. Plaintiff was actually designated for this position on the organizational chart, but the position was given to another person more than 10 years younger than the plaintiff. This other person was less qualified that the plaintiff for the position.

The plaintiff was subjected to continuing discriminatory treatment and adverse employment actions by Mr. Kramer who sought to justify his mistreatment of the plaintiff with pretextual reasons. In particular, the plaintiff had previously reported serious

misconduct (corruption) on the part of a managerial official at the defendant's facility to the defendant.  This prompted an investigation which determined that the plaintiff's reports were correct.  In retaliation for plaintiff's report of misconduct, the managerial official who was the subject of plaintiff's report created a document with defamatory comments regarding the plaintiff's performance.  After the investigation of plaintiff's reports was concluded, plaintiff had been assured that the defamatory document would be removed from the plaintiff's file as it was without any basis in fact and plainly retaliatory.  These matters occurred in 2010.  Despite the foregoing, Mr. Kramer made reference to, and attempted to take adverse employment actions on the basis of, the defamatory document.

       The plaintiff reported the misconduct of Mr. Kramer to the human resources personnel of the defendant, but no action was taken to protect the plaintiff from Kramer's misconduct.  In September of 2012, counsel for the plaintiff placed the defendant on notice of its unlawful treatment of the plaintiff in violation of the ADEA and ADA, the misconduct of Mr. Kramer, and of other material facts related to this matter.  Plaintiff's counsel asked that his letter be considered a formal complaint and requested that appropriate action be taken.  In response, counsel for the defendant refused to allow counsel for the plaintiff to participate in any internal company process or to communicate directly with the defendant's EEO investigator.  Plaintiff's counsel thereafter again wrote defendant's counsel and gave additional detail of the unlawful treatment of the plaintiff by the defendant.  The defendant has not replied to that letter.  This correspondence is attached as Exhibit One to Plaintiff's Complaint (September 6, 2012, letter of Allan R. Holmes to Melvin Peterson, Director, Susan K. Reed, Human Resource Manager, The Boeing Company);  Exhibit Two to Plaintiff's Complaint (September 6, 2012, letter of

Chevon Fuller, Senior Counsel, Labor, Employment & Benefits, The Boeing Company, to Allan R. Holmes) and Exhibit Three to Plaintiff's Complaint (September 11, 2012, letter of Allan R. Holmes to Chevon Fuller, Esq.). These Exhibits are incorporated herein by reference.

Kramer's misconduct, the failure of the defendant to effectively intervene, and the stress related to his employment greatly exacerbated the plaintiff's disabilities. Defendant failed to reasonably accommodate the plaintiff by removing him from the supervision of Mr. Kramer, and defendant thereby caused the plaintiff to be unable to continue to work. Plaintiff was placed on leave of absence by the defendant.

While being treated for the disabilities exacerbated by the defendant's failure to reasonably accommodate, the plaintiff suffered a severe orthopedic injury which constitutes yet another disability. He has obtained the disability insurance benefits payable under the disability plans sponsored by the defendant.

Since obtaining disability insurance benefits, plaintiff's condition has responded to treatment, and he is able to perform his essential job functions. He has presented medical documentation of his ability to perform his essential job functions with reasonable accommodation, and he has repeatedly sought to return to work. As recently as September of 2013, plaintiff provided the defendant with medical documentation of his ability to perform his essential job functions with reasonable accommodation, but the defendant refused to consider that medical documentation.

Prior to his leave of absence, plaintiff had held 4 positions. Defendant required the plaintiff to train younger employees of the defendant regarding the performance of those positions, and the defendant has placed those younger employees in the positions which had been held by the plaintiff.

Despite the plaintiff's repeated attempts to return to work with reasonable accommodation, the defendant refused to allow the plaintiff to return to work and refused to properly engage in the interactive process required by the ADA.  On January 10, 2014, counsel for the plaintiff wrote the letter attached as Exhibit Four to this complaint to counsel for the defendant.  Said letter summarizes the mistreatment of the plaintiff by the defendant, and it attached the medical documentation which had been provided in September of 2013. (This medical documentation is not attached to Exhibit Four herein because of its sensitive nature).

Subsequent to this letter, on February 13, 2014, representatives of the defendant conferred with the plaintiff and indicated that there was no position of employment available to which he would be allowed to return.

.     The foregoing conduct of the defendant was intentional, malicious, willful, wanton, and reckless, and said conduct constitutes unlawful  retaliation and discrimination prohibited by the ADA which has proximately caused actual and punitive damages to the plaintiff together with the loss of wages resulting from his loss of active employment.

.     The foregoing conduct of the defendant was intentional, malicious, willful, wanton, and reckless, and said conduct constitutes unlawful  retaliation and discrimination prohibited by the ADEA which has proximately caused actual and damages to the plaintiff together with the loss of wages resulting from his loss of active employment.  Plaintiff is entitled to an award of liquidated damages under the ADEA.

**(2) The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

RESPONSE: In addition to any witnesses identified by the Defendant, the Plaintiff identifies the following:

(a) David Spires, the Plaintiff, will offer testimony in support of all facts alleged in the complaint.

(b) Tim Coyle, a vice president with the Defendant, should be able to testify to the Plaintiff's history of job performance.

(c) Jeff Culp, employed with Boeing Ethics, should be able to provide testimony and documentation of retaliation against the Plaintiff due to the Plaintiff's participation in a corruption investigation.

(d) Pierre Dade is a lesser qualified, significantly younger person who is/was employed in a position which should have been assigned to the Plaintiff. Indeed, Mr. Dade was placed in a position for which Mr. Spires was listed as the incumbent on the Boeing organizational chart.

(e) Don Worten is a lesser qualified, significantly younger person who is/was employed in a position which should have been assigned to the Plaintiff.

(f) Connie Houlihan is a Boeing employee who furnished various Boeing documents to the Plaintiff.

(g) Donald R. Johnson, II, M.D., and other physicians of the Southeastern Spine Institute can testify as to the Plaintiff's disability and limitations.

(h) Marci White, PT, MPT, and other employees of Charleston Physical Therapy will be able to testify regarding the Functional Capacity Assessment (FCA) they provided to the Defendant with regard to the Plaintiff.

(i) Eric L. Smith, a Boeing Sr. Manager, will testify as to activities as manager.

(j) E. Scott Davis, a Boeing Manager, will testify as to activities as manager.

6

(k)  The Plaintiff reserves the right to identify additional witnesses as they become known.

**(3) The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

RESPONSE:   The previously identified medical and physical therapy witnesses are both experts and fact witnesses.  Otherwise, Plaintiff has not determined whether it will offer an expert witness in this case but reserves the right to do so in accordance with the deadline set forth in the August 29, 2014 Scheduling Order.

**(4) A summary of the claims or defenses with statutory and/or case citations supporting same.**

The ADEA discrimination claims are based upon the defendant's decisions --- past and continuing --- to deny employment opportunity to the plaintiff on account of unlawful discrimination and retaliation.

A plaintiff may prevail in an age discrimination action under either of the familiar "mixed motive" or "pretext" framework.  See, *Loveless v. John's Ford, Inc.*, 2007 U.S. App. LEXIS 11001, 100 Fair Empl. Prac. Cas. (BNA) 1421 (4th Cir. 2007), *EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160 (4th Cir. 2004) and cases cited therein (describing frameworks and their availability under ADEA).  The matter is tried to a jury, and the plaintiff may recover back pay, front pay, and liquidated damages. *Id.*   Plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision. Gross *v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009).

To establish a prima facie case of wrongful termination under the ADA, "a plaintiff must show that (1) he was a 'qualified individual with a disability'; (2) he was the victim of an adverse employment action; (3) he was fulfilling his employer's legitimate expectations at the time; and (4) the circumstances raise a reasonable inference of unlawful discrimination." R*ohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004). To demonstrate he is a qualified individual with a disability, he must show that he is significantly restricted in a major life activity. *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 467 (4th Cir. 2002). An impairment's impact on a major life activity must be "permanent or long-term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). "[A] temporary impairment . . . will generally not qualify as a disability under the ADA. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time."

The Fourth Circuit adjudicates ADA claims under the burden-shifting framework of *McDonnell Douglas Corp*. v. *Green*, 411 U.S. 792, 802-05, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

Under the Americans with Disabilities Act, the plaintiff may be awarded the same remedies available under Title VII, namely lost wages and other equitable relief. (1) The 1991 Civil Rights Act amended the ADA to provide for the recovery of future wages, as well as compensatory damages such as damages for emotional pain, suffering, inconvenience, mental anguish and the loss and enjoyment of life. (2) Punitive damages are also available. (3) Finally, plaintiffs may recover attorneys fees and costs including the costs of expert witnesses.

Proof of retaliation under the ADA: Disability discrimination and retaliation claims under the ADA and Rehabilitation Act are evaluated under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), "pretext" framework. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 57-58 (4th Cir. 1995). Under the burden-shifting scheme, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of disability discrimination under either Act, a plaintiff must show that: (1) he is disabled; (2) he was otherwise qualified for the position; and (3) he suffered an adverse employment action solely on the basis of the disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). To establish a prima facie case of retaliation under either Act, a plaintiff must show that: (1) he has engaged in protected conduct; (2) "he suffered an adverse action subsequent to engaging in the protected conduct"; and (3) "there was a causal link between the protected activity and the adverse action." *Laber*, 438 F.3d at 432.

If the plaintiff is successful in establishing a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action. *Id*. If the defendant provides evidence of a nondiscriminatory reason for its action, the plaintiff, who bears the ultimate burden of persuasion, must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination or retaliation. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Laber*, 438 F.3d at 432.

Proof of Retaliation under the ADEA: See 29 U.S.C. § 623(d) stating that it is "unlawful for an employer to discriminate against any of his employees . . . because such

9

individual . . . has opposed any practice made unlawful" under the ADEA). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: "(1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

    5.    **Proposed dates for the following deadlines:**

    a.    <u>Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures.</u>

As set forth in the Scheduling Order;

    b.    <u>Completion of discovery.</u>

As set forth in the Scheduling Order.

    c.    <u>Dispositive motions</u>.

As set forth in the Scheduling Order.

    6.    **Special circumstances which would affect the time frames applied in preparing the scheduling order.**

The plaintiff is unaware of any special circumstances that would affect the time frames applied in the Proposed Scheduling Order.

    7.    **Any additional information requested in the Pre-Scheduling Order or otherwise requested by the assigned judge.**

No additional information has been requested at this time.

```
                              BY:    s/ Allan R. Holmes
                                     Allan R. Holmes (Fed ID # 1925)
                                     Timothy O. Lewis (Fed ID# 9864)
                                     GIBBS & HOLMES
                                     171 Church Street, Suite 110
                                     Charleston, SC 29402
                                     (843) 722-0033
October 3, 2014                      ATTORNEYS FOR PLAINTIFF
```

10